Dykman, J.
This action is brought _ by the plaintiff as-_ assignee of a claim of U. S. Lutz against the defendants- *627 for services of Lutz, rendered in the month of April, 1882, amounting to the sum of seventy-six dollars.
The answer of the defendants contains no denial of the claim, but the defense to the action is this: Lutz was in the employ of the defendants, who were railroad contractors, and they claim that he received an envelope containing eighty-four dollars and eighty cents to be paid to Thomas Minshull, another employee of the defendants, which he failed to deliver, and so became indebted to them in that amount, which they set up as a counter-claim in extinguishment of the plaintiff’s demand.
The original validity of the plaintiff’s claim standing thus admitted by the pleadings, it became only necessary for the plaintiff to prove the assignment to him, which was done, and then the defendants held the affirmative of the issue and the burthen was cast upon them to prove the counter-claim, and they undertook to sustain their defense by this proof.
Dwight Montgomery swore he put the money in an en-1 velope in currency and delivered it to William P. King, the paymaster of the defendants.
William P. King was called as a witness and this is his language upon the chief point: “I recollect the sum of $84.80 received from Mr. Montgomery as testified by him. ' I laid this envelope sealed on the table for Mr. Lutz to get. He asked for it. I think he took it. That money was handed to Mr. Lutz. I laid out the money on the table to him. If he had not taken it, it would not have gone.” On his redirect examination he said: “Mir. Lutz asked me to fill Minshull’s envelope and give it to him, as he wanted to go. I filled it and laid it on the table on the right side five feet from Mr. Lutz. He was standing at the time. In five minutes he left the office.”
That was on the twentieth day of January, 1882, at Closter, Hew Jersey, and Montgomery, Lutz and Eckstrom were present. Montgomery placed the money in the envelopes for the men ana sealed them. King took about 200 or 250 of the envelopes, Eckerson, who was also a paymaster, took about the same number, and Lutz, who was paymaster in his division, took the balance, about 300 as the witness King supposed. There seems to have been no precise account of the number of the envelopes or the persons to whom they were directed. The envelopes taken by Lutz were directed to the men on his division, the Americans by name and the Italians by numbers. Lutz took his pile and put them in a tin box, and the others did so likewise. This witness said there were something like 300 envelopes in the pile of Lutz, before he took it away, and it took Lutz twenty or thirty minutes to put these *628 envelopes in his tin box, and they were so put in at two different times.
This is the affirmative proof of the defendants to establish their counter-claim, and it is entirely insufficient. There is no proof that Lutz received the lost envelope and, from the methods adopted and pursued in their distribution there could be none. There were 700 or 800 envelopes laid on the table, King took 200 or 250, Eckstrom took about the same number and Lutz took the remaining number. The number taken by' each was unknown. No list was made of the names or numbers upon the envelopes taken by either, and no memorandum, check, tally or account was made or taken of the envelopes in any way or, in any form. They were thrown upon the table promiscuously as they were filled and indorsed, and from that mixed and confused mass so mingled together without discrimination they selected such as they wanted and placed them in their tin boxes until all had been taken from the table, and neither one ‘ of them was charged with any specific envelope or any specified number. Such absence of system was quite certain to be followed by confusion and mistakes. It was absolutely impossible to trace any single envelope, or to ascertain who received it from the table, because no list was made of the envelopes taken.
It is true one witness says the envelopes were marked with the names of the men and the amounts due, and those names were checked off from the pay-roll book to see if they corresponded, and then passed over to the table where the money was ready to be put in them. But this was only to ascertain that there was an envelepe for each man.
John Satterlee, one of the defendants, testified to a conversation with Lutz, on the twenty-eighth or twenty-ninth day of January, in which he said he received the envelope containing Minshull’s pay from King, and that in the month of April following Lutz agreed that his April pay should liquidate the Minshull debt, and that in the first conversation Lutz said he supposed he had lost the money out of his overcoat pocket.
This testimony encounters much contradiction from the known facts and circumstances in the case. Lutz is not accused of dishonesty. The theory of the defendants is that he received the Minshull envelope and lost it; assuming his honesty, therefore, he would be quite unlikely in April to admit the reception and loss of the énvelope to this witness, which he has steadily denied. ■ Such admission is also in antagonism with his subsequent action in the assignment of the claim for his April pay to the Smiths on the 5th day of April, 1883.
*629 It Is quite improbable also that Lutz would say he lost the envelope from his overcoat pocket, when all the witnesses say he put them all in a tin box.
Such testimony is also inconsistent with the action of the cashier of the defendants, represented by the following, certificate:
“U. S. Lutz, superintendent at Rockland Park, has made nineteen days in April, at $100 per month
“ Amount due him, $76.
“ Grood at Smith Brer’s only.
“CARLA. ECKSTROM,
“S. H. &€o.
‘April 22, 1882.”
That paper was in the handwriting of Eckstrom, the time-keeper of Satterlee, Hosch & Co., and he wrote it on the day of its date, at the store of the plaintiff in this action, who cashed the same, and it never went into the possession of Lutz.
In addition to all these facts, we have the positive testimony of Lutz that he did-not receive the envelope marked Thomas Minshull, and had no knowledge of the same; that the defendants never delivered to him the $84.80, and that he never retained or converted to his own use any money, and that he never was accused of the same by the defendants directly, and the only thing said to him about that money was by the clerk, Montgomery, who came to him on Sunday, January 22, 1882, to look over his packet of pay envelopes, which he had received on Saturday, January 21, 1882, from Montgomery, at Closter.. These dates are one day in advance of the other testimony; but that is not material.
This witness Lutz further testified that he did not tell John Satterlee that he received the envelope containing Minshiill’s money from Mr. King, and that he did not agree that Ms April pay should liqmdate the Minshull debt. He was then asked this question on his second examination by commission. “Third interrogatory—He (meamng John Satterlee) also testified to a conversation between you and him at Tappan, in which he testified in substance as follows : 11 asked Lutz why Minshull had not been paid. He answered me by saying he must have lost the money from his overcoat pocket. I asked him why he did not notify me of the fact. He replied that he had hoped that it would turn up. He would wait a few days. That I should pay Mr. Minshull, and if he did not find it he would repay it to me. I asked Mm in the conversation if he was sure he received it from Mr. King, and he said *630 he was.’ Did such a conversation take place or any portion of it? The answer of the witness was: ‘No such conversation took pláce; the money I carried for other men was not carried in an overcoat pocket but in a tin box.’ ”
On the same examination the witness testified: “I had but one conversation with John Satterlee about the Minshull money, and that was at Closter, New Jersey; I do not remember the date, but I think it was the latter part of January, A. D. 1882. On Saturday evening late, being the 21st day of January, 1882, I think I received a tin box containing money for the men under me; the money belonging to each man was in a sealed envelope in the tin box. I took the money from Closter, New Jersey, to Clarksville, New York, and took it to my hotel, or rather boarding-house, a private family, and made an inventory of the money, and did not leave my room that night. The next day, Sunday, Mr. Montgomery came to see me. He came to my room and said they had missed Minshull’s money, and thought they probably had put it in the tin box for me by mistake. He looked over all the envelopes and we compared with the inventory I had made and found it was not there. Minshull was not one of the men I was to pay. A few days thereafter I saw Mr. Satterlee at Closter, New Jersey, and we spoke of the matter, and Mr. Satterlee said it was all right, or words to that effect, leading me to believe that the money had been found or the error discovered, or something of the like, and that was the only conversation I had with Mr. Satterlee in regard to the matter.”
He further reiterated his denial of the delivery of the Minshull money to him, and, further, he said he paid the men the money he had on the following Monday. That he saw Minshull on that day, when the latter asked him i£ he had his money, and he told him he had not.
This last testimony stands uncontradicted, although the witnesses who could deny the same if it was untrue were at the command of the defendants, and it overthrows the theory of the defendants respecting the receipt of the missing envelope by Lutz.
In fact the defendants’ witness Montgomery confirms this testimony, for he says he went to see Lutz on Sunday. Why then should Montgomery say to Lutz at that interview they had missed Minshull’s money, and thought probably they had put the same in the tin box by mistake, if they believed he had taken the same as they testified. That very search demonstrated their uncertainty. They did not then say Lutz took the envelope. The search was for a paper assumed to be lost or mislaid, and probably in *631 the tin box of Lutz by mistake. Besides Lutz made an inventory of his envelopes Saturday when he reached his hoarding house, and on Sunday Montgomery looked over ah the envelopes and compared the inventory with Lutz and found the Minshull envelope was not there.
The careful examination we have thus made seems to demonstrate the absolute failure of the defendants to trace the lost envelope to the custody or possession of Lutz, and .the painstaking and reliable referee before whom the cause was tried refused to find the receipt of the money or its retention by Lutz, or his indebtedness to the defendants by reason of the same, but he found and decided that Lutz did not become so indebted, and that the defendants were indebted to the plaintiff in the amount claimed, and we yield our concurrence to such decision.
A contrary conclusion would be at war with convincing facts and testimony which command the assent of the judgment and conscience of the court. i
It now becomes necessary to examine another question in the case raised by one of the exceptions of the defendants.
Upon the trial of the cause before the referee the plaintiff offered in evidence a letter of John Satterlee & Oo. to the plaintiff containing an offer to pay fifty dollars in full liquidation of his claim, and it was received and read in evidence over the objection of the counsel for the defendants, and such admission is now assigned for error, and it was so, but while the objection was valid the testimony was entirely immaterial.
There was no denial of the plaintiff’s claim in the answer «of the. defendants, and he was, therefore, not required to make any proof of the same upon the trial. He was not required to prove a negative, and the counter-claim and payment pleaded by the defendants were affirmative defenses to be established by them.
The admission of the letter, therefore, could not possibly have affected the result, and should not be permitted to reverse the judgment. Lerche v. Brasher, 104 N. Y., 161; 4 N. Y. State Rep., 335.
The same rule applies to the testimony of the plaintiff respecting the offer of twenty-five dollars by Satterlee to ■settle the claim.
The other exceptions of the defendants contained in the appeal book have received careful examination and found to present no errors, and after an examination of unusual length and of great care we reach the same result as before, that the case was properly decided, and that the judgment should be affirmed, with costs.
Barnard, P. J., and Dykman, J., concur.